IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LIQUID CAPITAL OF AMERICA CORP., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-3102-S-BH |
| | § | |
| EFFECTIVE BUSINESS SOLUTIONS INC. and ALFREDO MACHADO, | § | |
| | § | |
| Defendants. | § | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

By electronic order of reference dated October 3, 2019 (doc. 15), before the Court is *Plaintiff's Motion for Clerk's Entry of Default, Motion for Default Judgment, and Brief in Support*, filed October 2, 2019 (doc. 13).  Based on the relevant filings and applicable law, the motion for default judgment should be **GRANTED in part**.

## I.  BACKGROUND

On November 21, 2018, Liquid Capital of America Corp. (Plaintiff) sued Effective Business Solutions, Inc. (EBS) for breach of contract and indemnification, and Alfredo Machado a/k/a Alfredo Machado Zingg (Machado) (collectively Defendants), for fraud, negligent misrepresentation, and breach of guaranty. (doc. 1 at 8-13.)[1]

On May 8, 2006, Plaintiff and Machado executed a franchise agreement granting him the right to use the Liquid Capital System to operate a business providing factoring and financial services, for ten years (2006 Agreement).  (docs. 1 at 3, 5; 1-2.)  On June 6, 2006, they executed a transfer and consent agreement transferring Machado's rights under the 2006 Agreement to EBS (Transfer Agreement), as amended by an Amendment to the Transfer Agreement dated January 4,

---

[1]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

2011 (Amendment). (docs. 1 at 5; 1-3; 1-4.) On May 8, 2016, Plaintiff and EBS agreed to extend the franchise agreement and executed an agreement for another ten-year term (2016 Agreement). Machado contemporaneously executed a Guarantee and Assumption Agreement (Guaranty), agreeing to be personally liable for the debts and obligations under the 2006 Agreement, Transfer Agreement, Amendment, and 2016 Agreement (collectively, the Franchise Agreement). (docs. 1 at 5; 1-1.)

Under the terms the Franchise Agreement, EBS agreed, in part, to attend annual conferences for training and to submit accurate financial statements to Plaintiff. (docs. 1 at 4; 1-1 at 28, 31.) It also agreed to not deal with any lender, re-factor, or investor for financing its franchised business or funding its client transactions, without first obtaining an executed financing estoppel certificate "that agree[d] to hold [Plaintiff] and its affiliates harmless from, among other things, detrimental reliance claims and similar claims." (docs. 1 at 4; 1-1 at 33.) EBS would be in default if, among other things, it failed to attend conferences, provide Plaintiff periodic financial statements, or obtain executed financing estoppel certificates from investors and submit them to it. (doc. 1-1 at 41-43.)

In February 2018, Plaintiff was served with a lawsuit filed in a Puerto Rican court that claimed Machado and/or EBS had borrowed funds from an individual investor (Puerto Rican Lawsuit), which violates the Franchise Agreement provision barring EBS from obtaining financing from lenders without an executed estoppel certificate.[2] (doc. 1 at 5-6.) In mid to late summer of 2018, Plaintiff learned that Defendants had obtained funding for EBS from other investors after

---

[2]The Lawsuit, *David B. Frazier, Diane Friazier Y La Sociedad Legal De Gananciales Compuesta Por Ambos v. Effective Business Solutions, Inc. h/n/c Liquid Capital Puerto Rico; Liquid Capital of America Corp.; Liquid Capital Exchange, Inc.; Alfredo Machado, Natalie Machado Zingg Y La Sociedad Legal De Gananciales Compuetsa Por Ambos*, is pending before El Estado Libre Asociado De Puerto Rico Tribunal De Primera Instancia Sala Superior De Humacao, Civil Num: HSCI201800090(207). (docs. 1 at 5-6; 14-5 at 4.)

telling them that their funds were being invested in finance transactions run through the Liquid Capital System; Defendants never invested those funds through the Liquid Capital System, however. (*Id.* at 6-7.)  Plaintiff also alleges that Defendants submitted financial statements for 2016 that did not disclose the existence of the investors or the amounts owed to them, and that they failed to submit financial statements for 2017.  (*Id.* at 7-8.)  Consequently, on October 31, 2018, Plaintiff sent Defendants a Notice of Termination, which notified them of these contractual violations, as well as the termination of the Franchise Agreement. (docs. 1 at 7-8; 1-5.)

On November 21, 2018, the same day this action was filed, summonses were issued for Defendants.  (doc. 5.)  Plaintiff properly served Defendants through the Texas Secretary of State on November 28, 2018.  (docs. 6, 6-1.)  On May 29, 2019, it moved for substituted service on Defendants, and the motion was granted.  (*See* docs. 8, 10.)  Plaintiff properly served Defendants via substituted service on June 3, 2019.  (doc. 11.)  After Defendants failed to answer or respond to the complaint, it sought and obtained entry of default on October 3, 2019.  (docs. 13, 16.)

Plaintiff seeks (i) compensatory damages against Machado for fraud, negligent misrepresentation, and breach of guaranty; (ii) indemnification from EBS for its losses, costs, and legal fees in accordance with the Franchise Agreement; and (iii) compensatory damages against EBS for breach of contract.  (docs. 1 at 8-11; 13 at 2.)  It also seeks to recover pre-judgment and post-judgment interest at the maximum rates permitted by law, as well as its attorney's fees and costs. (docs. 1 at 11, 13; 13 at 2-3.)

## II.  MOTION FOR DEFAULT JUDGMENT

Plaintiff moves for default judgment under Rule 55 of the Federal Rules of Civil Procedure. (doc. 13.)

3

Rule 55 sets forth the conditions under which default may be entered against a party, as well as the procedure to seek the entry of default judgment. There is a three-step process for securing a default judgment. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a default occurs when a party "has failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a). Next, an entry of default must be entered when the default is established "by affidavit or otherwise." *See id.*; *New York Life Ins. Co.*, 84 F.3d at 141. Third, a party may apply to the clerk or the court for a default judgment after entry of default. Fed. R. Civ. P. 55(b); *New York Life Ins. Co.*, 84 F.3d at 141. Here, because Defendants have failed to plead or otherwise defend, and Plaintiff has obtained an entry of default on them, the first two requisites for a default judgment have been met. (docs. 11, 13, 16.) Remaining for determination is whether a default judgment is warranted.

"'Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.'" *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quoting *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)). Moreover, "a party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Id.* (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (per curiam)). "There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Only well-pleaded facts, not conclusions of law, are presumed to be true. *Id.* Default judgment "should not be granted on the claim, without more, that the defendant had failed to meet a procedural time requirement." *Mason & Hanger–Silas Mason Co., Inc. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir. 1984) (per curiam).

The decision to enter a judgment by default is discretionary. *Stelax Indus., Ltd. v. Donahue*, No. 3:03-CV-923-M, 2004 WL 733844, at *11 (N.D. Tex. Mar. 25, 2004). "Any doubt as to whether to enter or set aside a default judgment must be resolved in favor of the defaulting party." *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). In determining whether the entry of a default judgment is appropriate, courts look to whether default judgment is procedurally warranted, whether the plaintiff's complaint provides a sufficient factual basis for the plaintiff's claim for relief, and whether the requested relief is appropriate. *See J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015) (citing *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008) (citing *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)).

A.    **Procedural Requirements**

Courts consider numerous factors in deciding whether to grant a motion for default judgment. 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2685 (3d ed. 1998). The applicable factors include: (1) the amount of money involved; (2) whether there are material issues of fact or issues of substantial public importance at stake; (3) whether the default is technical in nature; (4) the extent of prejudice to the plaintiff due to the delay; (5) whether the grounds for default are clearly established; (6) the harsh effect of a default judgment; (7) whether the default resulted from a good faith mistake or excusable neglect on the defendant's part; (8) whether the plaintiff's actions contributed to delay; and (9) whether the court would be obligated to set aside the default on motion by the defendant. *Id.*; *see Lindsey*, 161 F.3d at 893 (citing 10A WRIGHT, MILLER, KANE & MARCUS, FEDERAL

PRACTICE AND PROCEDURE § 2685); *Stelax Indus., Ltd.*, 2004 WL 733844, at *11 (same).

Plaintiff seeks $69,383.29 in compensatory damages, $33,851.78 in attorney's fees and costs, pre-judgment interest at the rate of 18% per annum, and post-judgment interest at the applicable federal rate. (doc. 13 at 7-8.)  It provides copies of the Franchise Agreement, Guaranty, and Notice of Termination Letter as well as the declaration of Plaintiff's vice president, which verifies the allegations in the complaint and states that Plaintiff incurred $31,474.53 in expenses from operating and wrapping up Defendants' franchise business upon contractual termination and $37,908.76 in attorney's fees and costs from the Puerto Rican Lawsuit.  (doc. 14  at 4-97.)  It submitted the invoices reflecting the amounts paid in connection with operating and wrapping up Defendants' franchise business from August 24, 2018 to January 13, 2019, and the sworn declaration of Plaintiff's counsel in the Puerto Rican Lawsuit stating the requested amount for fees and expenses were reasonable and necessary, as well as billing invoices detailing the services rendered and expenses incurred in that lawsuit. (*Id.* at 99-115, 141, 144-240.)  Plaintiff also included the declaration from its counsel in this lawsuit stating that the $33,851.78 in attorney's fees and costs incurred were reasonable and necessary, and billing invoices showing the work performed, attorney hourly rates, and the amount of attorney's fees. (*Id.* at 248-49, 251-97.)

Under the first factor, although the total amount requested could be considered substantial, that "is not dispositive." *US Green Bldg. Council, Inc. v. Wardell*, No. 3:14-CV-01541-M-BH, 2016 WL 3752964, at *3 (N.D. Tex. June 17, 2016), *adopted by* 2016 WL 3766362 (N.D. Tex. July 11, 2016).  Regarding the second factor, there are no material issues of fact in dispute as Defendants have failed to file any responsive pleadings in this case.[3]  *See Nishimatsu Constr. Co.*, 515 F.2d at

---

[3]Plaintiff includes a copy of a military service declaration and a status report from the Department of Defense Manpower Data Center showing that Machado is not in the military. (*See* doc. 14 at 131-34.)

1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact"). Although the default appears to be technical in nature (third factor), Plaintiff is prejudiced and harmed by the continued delay in this case, which is the fourth factor. *See United States v. Fincanon*, No. 7:08-CV-61-O, 2009 WL 301988, at *2 (N.D. Tex. Feb. 6, 2009) (holding that a plaintiff's interests were prejudiced because the defendant's failure to respond brought the adversary process to a halt). Under the fifth and sixth factors, the grounds for default are clearly established, and a default judgment is not unusually harsh under these facts given that Defendants have received ample notice of this action and sufficient time to respond. *See Lindsey*, 161 F.3d at 893; *see also J & J Sports Prods.*, 126 F. Supp. 3d at 814 ("Defendants' failure to respond to Plaintiff's Complaint or otherwise appear in this case for the past ten months 'mitigat[es] the harshness of a default judgment.'") (citations omitted).. The seventh, eighth, and ninth factors similarly favor default judgment because Defendants have not offered any evidence that their failure to answer was the product of a good faith mistake or excuse, Plaintiff has not contributed to the delay in this case, and there does not appear to be any basis upon which the Court would be obligated to set aside the default. *See Lindsey*, 161 F.3d at 893

Because Defendants were properly served in this action and failed to answer or otherwise defend themselves, the grounds for default judgment are clearly established. (*See* docs. 6, 6-1, 11.) Accordingly, the procedural prerequisites for a default judgment are satisfied. *See Ramsey*, 2016 WL 1701966, at *3.

**B.    Entitlement to Judgment**

Where, as here, a default has been entered under Rule 55, "the factual allegations of the complaint are taken as true." *Pathway Senior Living LLC v. Pathways Senior Living LLC*, No. 3:15-

CV-02607-M, 2016 WL 1059536, at *2 (N.D. Tex. Mar. 17, 2016). In determining whether there is a sufficient basis in the pleadings for judgment, the Fifth Circuit "draw[s] meaning from the case law on Rule 8." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 497 (5th Cir. 2015). Factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," but "detailed factual allegations" are not required. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This "low threshold" is less rigorous than that under Rule 12(b)(6). *Id.* at 498. Recognizing that "a defendant must invoke Rule 12 in order to avail itself of that Rule's protections, [while] a default is the product of a defendant's inaction," the Fifth Circuit has "decline[d] to import Rule 12 standards into the default-judgment context." *Id.* at 498 n.3.

### 1.  EBS

Plaintiff asserts claims against EBS for breach of contract and indemnification. (*See* docs. 1 at 11-12; 13 at 2.)

#### a.  Breach of Contract

The essential elements of a breach of contract claim in Texas[4] are: (1) the existence of a valid

---

[4]"It is a long-recognized principle that federal courts sitting in diversity cases 'apply state substantive law and federal procedural law.'" *Shady Grove Orthopedic Assoc., P.A., v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)).  "Under Texas law, the substantive law of the state chosen by the parties to govern their contractual rights and duties will be applied unless the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice." *United States ex rel. Varco Pruden Bldgs. v. Reid & Gary Strickland Co.*, 161 F.3d 915, 919 (5th Cir. 1998) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex.1990)).  Here, the Franchise Agreement includes a choice-of-law clause stating that "[t]his Agreement and all transactions contemplated hereunder and/or evidenced hereby shall be governed by, construed under and enforced in accordance with the internal laws of the State of Texas without regard to the application of Texas conflict of law rules." (*See* doc. 1-1 at 50); *see De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1413 (5th Cir. 1995) (quoting *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984)) ("[T]he law of the state with the most significant relationship

contract; (2) breach of the contract by the defendant; (3) performance or tendered performance by the plaintiff; and (4) damages sustained by the plaintiff as a result of the defendant's breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.–Houston [14th Dist.] 2005, pet. denied)).  "A breach occurs when a party fails or refuses to do something he has promised to do." *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

Here, Plaintiff attached copies of the Franchise Agreement to its complaint and motion for default judgment.  (*See* docs. 1-1, 14.)  It alleges that EBS breached the agreement by, among other things, "(a) failing to operate the franchised business in a manner consistent with [Plaintiff's] standards; (b) failing to provide financial statements for 2017; (c) soliciting and obtaining Investors for financing without obtaining executed Financing Estoppel Certificates; (d) failing to make payments in the ordinary course of business; (e) materially distorting material information pertaining to the franchised business by providing inaccurate and misleading financial statements to [it]; and (f) by having execution levied against EBS's business or property in connection with the [Puerto Rico] Lawsuit."  (doc. 1 at 12.)  Plaintiff also provides the sworn declaration of its vice president stating that Plaintiff provided EBS certain support services, as well as access to its "proprietary methods and procedures, trademarks, staffing, sales strategies, and advertising programs," as required under the Franchise Agreement.  (doc. 14 at 5.)  As a result of EBS's breach of the Franchise Agreement, Plaintiff expended $37,908.76 to defend itself in the Puerto Rican Lawsuit, and incurred total costs of $31,474.53 in operating and wrapping up Defendants' franchise business

---

to the particular substantive issue will be applied to resolve that issue."); *see, e.g., DB W., Inc.-Texas v. Invista, S.A. R.L.*, No. CIV.A. H-09-2750, 2009 WL 3297297, at *1 (S.D. Tex. Oct. 13, 2009) (finding the choice-of-law provision in the contract established Delaware as the governing substantive law to the allegations in the lawsuit).  Further, the parties do not dispute that Texas law applies.

post-termination. (*Id.* at 7-8.) Based on these allegations and evidence, Plaintiff has established that EBS breached the Franchise Agreement and is entitled to default judgment on its breach of contract claim.

### b.    Indemnification

Plaintiff alleges that under the indemnification provision of the Franchise Agreement, EBS agreed to indemnify it for its losses, including legal fees and costs, as the result of a breach or violation of the Franchise Agreement or in connection with the operation of the franchised business. (doc. 1 at 11.)  It also alleges that it is "entitled to an award of its legal fees and costs incurred in connection with prosecuting its claim against EBS."  (*Id.*)  Because Plaintiff is seeking a determination as to the rights and obligations of the parties under the indemnification provision, this claim is properly characterized as a request for declaratory relief.

The federal Declaratory Judgment Act (Act) provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.  The Act "does not create a substantive cause of action" and "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law." *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, 3:08-CV-165-D, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (citations and quotations omitted).  The Act is an authorization and not a command, and allows federal courts broad, but not unfettered, discretion to grant or refuse declaratory judgment. *Id.* Nevertheless, "[i]f a request for a declaratory judgment adds nothing to an existing lawsuit, it need not be permitted." *Cypress/Spanish Ft. I, LP v. Prof'l Serv. Indus., Inc.*, 814 F. Supp. 2d 698, 710

(N.D. Tex. 2011) (citing *Madry v. Fina Oil & Chem. Co.*, 44 F.3d 1004, 1994 WL 733494, at *2 (5th Cir. 1994)).

Here, Plaintiff seeks "indemnification for [its] losses, costs, and legal fees from EBS in accordance with the [Franchise] Agreement." (doc. 13 at 2.)  As discussed, the allegations in the complaint support a finding that EBS breached the Franchise Agreement, and that Plaintiff is entitled to recover for its breach of contract claim against EBS.  "Courts in the Fifth Circuit regularly reject declaratory judgment claims seeking the resolution of issues that will be resolved as part of the claims in the lawsuit." *Am. Equip. Co. v. Turner Bros. Crane & Rigging, LLC*, No. 4:13-CV-2011, 2014 WL 3543720, at *4 (S.D. Tex. July 14, 2014) (citing cases).  Because Plaintiff's indemnity claim directly implicates the same type of recovery as its breach of contract claim, it is duplicative of the breach of contract claim and should be rejected.  *See Madry*, 1994 WL 733494, at *2 (reversing award of declaratory relief where "[t]he declaratory judgment does not declare any significant rights not already at issue in the contract dispute"); *see, e.g., Xtria LLC v. Tracking Sys., Inc.*, No. 3:07-CV-0160-D, 2007 WL 1791252, at *3 (N.D. Tex. June 21, 2007) (dismissing the plaintiff's declaratory judgment action because it "essentially duplicates [the plaintiff's] breach of contract claim"); *Scritchfield v. Mutual of Omaha Ins. Co.*, 341 F. Supp.2d 675, 682 (E.D. Tex. 2004) (dismissing plaintiffs' declaratory judgment claims because "[p]laintiffs would get nothing from a declaratory judgement [sic] that they would not get from prevailing on their breach of contract claims").

### 2.    *Claims Against Machado*

Plaintiff asserts causes of action against Machado for fraud, negligent misrepresentation, and breach of guaranty.  (*See* docs. 1 at 8-13; 13 at 2.)

11

a.    **Fraud**

In Texas, the elements of common law fraud are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).  Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997).  "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (internal quotations and citations omitted).

Here, Plaintiff alleges that in 2017, Machado provided it the financial statements of EBS for the year ending December 31, 2016, but they did not disclose the funding EBS had been receiving from outside investors.  (doc. 1 at 8.)  It also alleges that Machado failed to provide financial statements for the year ending December 31, 2017.  (*Id.*)  The sworn declaration of Plaintiff's vice president states that the financial statements from Machado failed to specifically disclose the

investor from the Puerto Rican Lawsuit and the amounts owed.  (doc. 14 at 6.)  Plaintiff further alleges that Machado had a duty to disclose to it the outside investor funding EBS had been obtaining, and that he had "made untrue statements of material fact and/or omitted to state material facts necessary in order to make the statements made or state of affairs not misleading."  (doc. 1 at 8-9.)  Plaintiff has therefore properly pled the first three elements of a common law fraud claim.

Plaintiff also alleges that Machado "knew the statements or omissions were untrue or misleading when made," and he "made the misstatements or omissions with the intent to deceive and for the purpose of inducing [it] to act in reliance upon the misstatements or omissions," which satisfies the third and fourth elements of fraud.  (doc. 1 at 9.)  It has sufficiently pleaded the sixth and seventh elements of fraud by alleging that it relied on "Machado's misstatements or omissions and was thereby induced to continue operating under the Franchise Agreement rather than terminate it," and had sustained damages that was a "direct and proximate result of Machado's wrongful conduct."  (*Id.*)  Plaintiff's allegations clearly detail the who, what, when, where, and how of the fraud.  *See Benchmark Electronics*, 343 F.3d at 724.  Accordingly, the pleadings and evidence set forth a sufficient basis for its common law fraud claim against Machado under both Rules 8 and 9.  *See, e.g., Cortis, Inc. v. Cortislim Int'l, Inc.*, No. 3:12-CV-0562-B, 2016 WL 6330579, at *5 (N.D. Tex. July 22, 2016) (finding allegations that "(1) Defaulted Defendants made material representations about, *inter alia*, CortiSlim, Inc.'s assets, debt, and value, as well as what use would be made of Cortis's investment; (2) these representations were false in numerous ways, including that CortiSlim, Inc. did not own the assets that Defaulted Defendants claimed it did, and that CortiSlim, Inc. did not use Cortis's investment in the manner promised; (3) when Defaulted Defendants made these representations, they did so knowingly or recklessly; (4) their representations

were intended to induce Cortis to invest in CortiSlim, Inc.; (5) Cortis did invest; and, as a result, (6) suffered a loss of its investment of $650,000.00, as well as interest" were sufficient to support a default judgment for a common law fraud claim).

### b.    Negligent Misrepresentation

A claim for negligent misrepresentation under Texas law consists of four elements: (1) the defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *See Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 396-97 (5th Cir. 2005) (citation omitted); *see also Nazareth Int'l Inc. v. J.C Penney Co.*, 287 S.W.3d 452, 460 (Tex. App—Dallas 2009, pet. denied).  A negligent misrepresentation claim, however, cannot be based on a promise to act in the future, but must rather focus on misstatements of existing facts. *See Thawar v. 7-Eleven, Inc.*, 165 F. Supp. 3d 524, 533 (N.D. Tex. 2016).

Here, Plaintiff alleges that "Machado owed [it] a duty to advise it of EBS's true financial position because of, among other things, his superior and undisclosed knowledge concerning EBS's relationship with the Investors and its financial obligations relative to the Investors," but he instead "provided [it] with false Financial Statements for EBS which failed to disclose the existence of the Investors and the financial obligations of EBS to the Investors." (doc. 1 at 9-10.)  It claims that "Machado did not inform [it] of EBS's financial condition in an effort to induce [it] to continue operating under the Franchise Agreement, rather than terminating it," which shows that he "made representations to [it] in the course of Machado's business and/or in transactions in which Machado

14

had an interest." (*Id.* at 10.)  Machado had superior knowledge of information that was not readily available to it, Plaintiff contends, and "[i]n supplying information that he knew or should have known was false, Machado failed to exercise reasonable care or competence in communicating EBS's financial position to [it]." (*Id.*)  Plaintiff also alleges that it justifiably relied on Machado's misstatements and omissions to its detriment as it was "induced to continue operating under the Franchise Agreement rather than terminate it," and the compensatory damages it sustained were "a direct and proximate result of Machado's wrongful conduct." (*Id.*)  Based on these allegations, Plaintiff has adequately set forth a substantive cause of action for negligent misrepresentation against Machado.  *See, e.g., Edge Adhesives, Inc. v. Sharpe Concepts, LLC*, No. 4:15-CV-405-O, 2015 WL 12743618, at *4 (N.D. Tex. Aug. 31, 2015) (finding sufficient to support a default judgment on a negligent misrepresentation claim allegations that "Defendants represented to Edge that Defendants could properly implement Fishbowl's Software. When the Software was not properly implemented, Defendants represented that they would cure the deficiencies in a timely manner. These representations were made to Edge in the course of Edge's business and in a transaction in which Edge had an interest. Defendants did not exercise reasonable care or competence in obtaining or communicating the information. Edge justifiably relied on Defendants' representations.").

### c.    Breach of Guaranty

Under Texas law,[5] to recover on a claim for breach of a guaranty agreement, the holder of

---

[5]Although the Guaranty does not include a choice-of-law provision, it was entered contemporaneously with the 2016 Agreement, which stated that "[t]his Agreement and all transactions contemplated hereunder and/or evidenced hereby shall be governed by, construed under and enforced in accordance with the internal laws of the State of Texas without regard to the application of Texas conflict of law rules." (See doc. 1-1 at 50); *see Varco Pruden Bldgs*, 161 F.3d at 919.

the guaranty must establish "proof of (1) the existence and ownership of the guaranty contract, (2) the terms of the underlying contract by the holder, (3) the occurrence of the conditions upon which liability is based, and (4) the failure or refusal to perform the promise by the guarantor." *Haggard v. Bank of Ozarks Inc.*, 668 F.3d 196, 199 (5th Cir. 2012) (quoting *Marshall v. Ford Motor Co.*, 878 S.W.2d 629, 631 (Tex.App.-Dallas, 1994, no writ)).

Here, Plaintiff alleges that contemporaneously with the Franchise Agreement, Machado executed the Guaranty, in which he unconditionally guaranteed all obligations of EBS under the terms of the Franchise Agreement. (doc. 1 at 12-13.) It also presents a copy of the Guaranty. (doc. 1-1 at 58-60.) Plaintiff alleges that EBS materially breached and defaulted under the terms of the Franchise Agreement, and as a result, Machado became obligated to perform EBS's obligations. (doc. 1 at 12-13.) Because Machado failed to perform the obligations owed Plaintiff under the Franchise Agreement, Machado breached the terms of the Guaranty. *See Haggard*, 668 F.3d at 199. Plaintiff has established that Machado has breached the Guaranty and is liable as guarantor, and that it is entitled to default judgment on its breach of guaranty claim.

## C.    Entitlement to Remedies

Plaintiff's motion for default judgment seeks to recover compensatory damages of $69,383.29 from Defendants on all its causes of action. (doc. 13 at 6-7.) It also seeks pre-judgment and post-judgment interest and attorney's fees and costs. (*Id.*)

In awarding relief, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The relief requested in a plaintiff's complaint limits the relief available in a default judgment. *See Sapp v. Renfroe*, 511 F.2d 172, 176 n. 3 (5th Cir. 1975). Damages on a default judgment are normally not awarded without a hearing

16

or a demonstration by detailed affidavits; a hearing is unnecessary, however, if the amount of damages can be determined with a mathematical calculation by reference to the pleadings and supporting documents. *See James*, 6 F.3d at 310. The plaintiff has the burden to provide an evidentiary basis for the damages it seeks. *Broadcast Music, Inc. v. Bostock Billiards & Bar Assoc.*, No. 3:12-CV-413-B, 2013 WL 12126268, at *3 (N.D. Tex. Jan. 18, 2013). Because the requested relief does not differ in kind from, or exceed in amount, of what is demanded in the pleadings, remaining for determination is whether the relief requested is appropriate based on governing law. *Chevron Intellectual Property, LLC v. Allen*, No. 7:08-CV-98-O, 2009 WL 2596610, at *3 (N.D. Tex. Aug. 24, 2009).

### 1.    *Monetary Damages*

Plaintiff seeks compensatory damages of $69,383.29 from Defendants on all its causes of action. (doc. 13 at 6-7.)

### a.    **One Satisfaction Rule**

When a party prevails on multiple causes of action for the same injury, "federal courts apply Texas's one satisfaction rule, which requires the prevailing party to elect between the alternative claims for purposes of recovery." *Malvino v. Delluniversita*, 840 F.3d 223, 233 (5th Cir. 2016). While a party is entitled to seek and pursue damages on a single injury through alternative theories of recovery, "[a] party is not entitled to double recovery," i.e., when a plaintiff obtains more than one recovery for the same injury. *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998). Under Texas law, "[w]hen a party tries a case on alternative theories of recovery and a jury returns favorable findings on two or more theories, the party has a right to a judgment on the theory entitling him to the greatest or most favorable relief." *Boyce Iron Works, Inc.*

*v. Southwestern Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988). If the prevailing party fails to elect between the alternative theories prior to the entry of judgment, the court should utilize the findings affording the greater recovery and render judgment accordingly. *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 367 (Tex. 1988).

Plaintiff requests compensatory damages for its fraud, negligent misrepresentation, and breach of guaranty claims against Machado. (doc. 13 at 6-7.) Because all the claims seek to compensate Plaintiff for the same thing—the damages it sustained from the undisclosed and unauthorized investor funding—the election of remedies theory applies. Plaintiff has not elected the theory under which it wishes to recover, however. Because it may recover its compensatory damages and attorney's fees under its breach of guaranty claim, and it will afford the greatest recovery against Machado, judgment should be entered on this claim. *See Bank of New York Mellon as Tr. for Certificate Holders of CWALT, Inc., Alternative Loan Tr. 2006-29T1, Mortg. Pass-Through Certificates, Series 2006-29T1 v. New Century Loan Servicing, LLC*, No. 4:17-CV-00646-ALM-CAN, 2019 WL 4728335, at *9 (E.D. Tex. July 18, 2019), *adopted by* 2019 WL 4722480 (E.D. Tex. Sept. 26, 2019) (finding plaintiff's breach of contract claim would afford it the greatest recovery over its other claims for breach of warranty, common law fraud, statutory fraud, and negligent misrepresentation).

### b.    Compensatory Damages

Plaintiff requests an award of $69,383.29 in compensatory damages from EBS, which represents the out-of-pocket expenses it incurred from EBS's breach of the Franchise Agreement. (doc. 1 at 12.) It correspondingly requests the same amount in compensatory damages against Machado under the Guaranty. (*Id.* at 13.) The sworn declaration of its vice president states that

18

Plaintiff incurred $31,474.53 in expenses in connection with operating and wrapping up Defendants' franchise business after the Franchise Agreement was terminated, and $37,908.76 in attorney's fees and costs from the Puerto Rican Lawsuit, and Plaintiff provides copies of the invoices showing the amounts paid from August 24, 2018 to January 13, 2019. (doc. 14 at 8-9, 99-115.) The sworn declaration of Plaintiff's counsel in the Puerto Rican Lawsuit states that Plaintiff incurred "reasonable and necessary attorneys' fees totaling $37,908.76" to defend itself in that lawsuit, and Plaintiff includes copies of counsel's billing invoices detailing the services rendered and expenses incurred. (*Id.* at 141, 144-240.) The evidence it has presented supports the loss amount asserted.

Because Plaintiff's losses are itemized and capable of mathematical calculation, the amount of judgment can be reliably computed from the record and without a hearing. *See* Fed. R. Civ. P. 55(b)(2) ("*If*, in order to enable the court to enter judgment . . . it is necessary to take an account or to determine the amount of damages . . . the court *may* conduct such hearings or order such references as it deems necessary and proper . . .) (emphasis added); *see also James*, 6 F.3d at 310 (stating that the court relied on affidavits, documentary evidence, and the judge's personal knowledge of the record). Based on the record, Plaintiff has shown that an award of $69,383.29 in compensatory damages is permitted under the terms of the Franchise Agreement and the Guaranty. Accordingly, Plaintiff should be awarded its compensatory damages, and Defendants, jointly and severally, should be ordered to pay the total amount of $69,383.29 in compensatory damages to Plaintiff.

### 2. *Attorney's Fees and Costs*

Plaintiff also seeks attorney's fees and costs incurred in this lawsuit in the amount of $33,851.78. (doc. 13 at 8.)

Texas law is applicable to the award of attorney's fees in diversity cases like this one. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Under Texas law, a party may recover attorney's fees only when allowed by statute or contract. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8); *see also 1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 382 (Tex. 2011) (citing *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 120 (Tex. 2009)). Here, the Franchise Agreement provides that Plaintiff is entitled to recover the reasonable attorney's fees, costs, and expenses it incurs in connection with any litigation between it and EBS. (*See* doc. 14 at 62.) The Guaranty also provides that Plaintiff is entitled to reimbursement of its legal fees and costs "in connection with any failure by [Machado] to comply with this Guaranty." (*See id.* at 91.)

In order to warrant an award of fees, a plaintiff need only prove that it was awarded damages and the reasonableness of the fee request. *See Mathis*, 302 F.3d at 462. "Although courts should consider several factors when awarding attorney's fees, a short hand version of these considerations is that the trial court may award those fees that are 'reasonable and necessary' for the prosecution of the suit." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991). In *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997), the Texas Supreme Court identified the following factors to determine the reasonableness of attorney's fees:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
>
> (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.* at 818 (citing Tex. Disciplinary R. Prof'l Conduct 1.04(b)).  The applicant is not required to present evidence on all of the factors, however. *Weaver v. Jamar*, 383 S.W.3d 805, 814 (Tex. App.–Houston [14th Dist.] 2012, no pet.).  "The trial court may also consider the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties." *Id.*

In Texas, uncontroverted attorney testimony or an affidavit testifying to the attorney's qualifications, reasonableness of the attorney's fees, and the basis for the opinion, may be sufficient to support an award of attorney's fees. *See Clary Corp. v. Smith*, 949 S.W.2d 452, 469 (Tex. App.–Fort Worth 1997, no writ) ("Where . . . trial counsel's testimony concerning attorneys' fees is clear, positive and direct, and uncontroverted, it is taken as true as a matter of law. This is especially true where the opposing party had the means and opportunity of disproving the testimony, if it were not true, and failed to do so.").  "The court, as a trier of fact, may award attorneys' fees *as a matter of law* in such circumstances, especially when the opposing party has the means and opportunity of disproving the testimony or evidence and fails to do so." *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990) (emphasis added).

Here, Plaintiff submits a declaration from its counsel, as well as corresponding billing records. (*See* doc. 14 at 242-97.)  Counsel's declaration and the billing records set out the hourly

rates for the individuals who worked on the case (*see id.* at 248-49), state that their rates are reasonable based on their skills and experience (*see id.* at 249), and opine that the fees incurred are reasonable and necessary (*see id.*).  It states that the sum of $33,851.78 in attorney's fees and expenses that Plaintiff seeks is "reasonable and necessary given the complexities involved in the case and relative to the usual and customary fees charged by vendors in the Dallas County area." (*Id.* at 249.)  The attached billing records itemize the time spent on this case with details regarding the specific work performed, the charges for that time, and the law firm's out-of-pocket expenses.  (*Id.* at 251-97.)  Under Texas law, Plaintiff's evidence is "legally sufficient" for an award of attorney's fees. *See In re Estate of Tyner*, 292 S.W.3d 179, 184 (Tex. App–Tyler 2009, no pet.) ("[A]ttorney swore under oath that he is a licensed attorney, he is familiar with the reasonable and necessary attorney's fees charged for appeals in civil actions such as this case, he has personal knowledge of the services rendered to [the party] in this matter, and those services were reasonable, necessary, and customary. Thus, [the party's] attorney's affidavit sufficiently established reasonable attorney's fees and is legally sufficient to support the trial court's award of attorney's fees.").  The amount of attorney's fees and costs Plaintiff seeks is reasonable as a matter of law. *See Ragsdale*, 801 S.W.2d at 882.  Accordingly, Plaintiff should be awarded the full amount requested.

### 3. *Pre-Judgment Interest*

Plaintiff requests pre-judgment interest at a rate of 18% as permitted under Texas state law and the express terms of the Franchise Agreement.  (doc. 13 at 7.)  State law controls the award of pre-judgment interest in diversity cases. *Wood v. Armco, Inc.*, 814 F.2d 211, 213 n. 2 (5th Cir. 1987).  Under Texas law, "a prevailing plaintiff in a contract case tried under Texas law is entitled to an award of prejudgment interest in all but exceptional circumstances." *Am. Int'l Trading Corp. v.*

*Petroleos Mexicanos*, 835 F.2d 536, 541 (5th Cir. 1987). "Although the trial court may exercise discretion to forego such an award in the presence of 'exceptional circumstances,' those circumstances must be explained." *Joy Pipe, USA, L.P. v. ISMT Ltd.*, 703 F. App'x 253, 258 (5th Cir. 2017) (citing *Concorde Limousines, Inc. v. Moloney Coachbuilders, Inc.*, 835 F.2d 541, 549 (5th Cir. 1987)). "Prejudgment interest begins to accrue on the earlier of 1) 180 days after the date a defendant receives written notice of a claim or 2) the date suit is filed." *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 531-32 (Tex. 1998). Pre-judgment interest is computed as simple interest. *Id.* at 532.

Here, the Franchise Agreement provides that "[a]ll amounts owing by Franchisee to Franchisor or Franchisor's Affiliates which are not paid when due shall bear interest after the due date until paid at a rate equal to the lesser of (i) eighteen percent (18%) per annum or (ii) the highest rate allowed by applicable law." (doc. 14 at 32.) Accordingly, Plaintiff should be awarded pre-judgment interest of 18% per annum from the date this suit was filed until the date final judgment is entered. *See, e.g., People's United Equip. Fin. Corp. v. Morris*, No. CV H-16-3657, 2018 WL 287860, at *3 (S.D. Tex. Jan. 4, 2018) ("Because the parties agreed to the maximum rate that state law permits, the court GRANTS People's United prejudgment interest at the 18% limit.").

### 4.   *Post-Judgment Interest*

Plaintiff also seeks post-judgment interest. (doc. 12 at 5.) "Post-judgment interest is awarded as a matter of course" under 28 U.S.C. § 1961(a). *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010) (citing 28 U.S.C. § 1961(a)). Given that "district courts do not have the discretion to deny post-judgment interest on monetary judgments," *Paisano Capital SA de CV v. 23 Tex. Produce, Inc.*, No. 3:19-CV-0852-B, 2019 WL 3239152, at *5 (N.D. Tex. July 18, 2019) (citing

*Fairmont Specialty Ins. Co. v. Apodaca*, 234 F. Supp. 3d 843, 855 (S.D. Tex. 2017)), Plaintiff's request for post-judgment interest should be granted and awarded at the applicable federal rate[6] from the date of final judgment until it is paid in full.

### III.  RECOMMENDATION

Plaintiff's motion for default judgment should be **GRANTED in part**, and it should recover from and against EBS and Machado, jointly and severally, (a) compensatory damages in the amount of $69,383.29; (b) attorney's fees and costs in the amount of $33,851.78; (c) pre-judgment interest at the rate of 18% per annum from November 21, 2018 until the date that final judgment is entered; and (d) post-judgment interest at the applicable federal rate from the date of final judgment until paid in full.

**SO RECOMMENDED** on this 30th day of March, 2020.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[6]The post-judgment interest rate is based upon the applicable federal rate. *See* 28 U.S.C. § 1961.

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F. 3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

25